IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRY JONES, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-cv-00901 |
| ) | Judge Trauger |
| AGRI-LABORATORIES, LTD., ) | |
| d/b/a AgriLabs, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by defendant Agri-Laboratories, Ltd. (Docket No. 20), to which plaintiff Jerry Jones has filed a response (Docket No. 29), and in support of which the defendant has filed a reply (Docket No. 31). For the reasons discussed below, the defendant's motion will be granted.

## FACTS

The plaintiff, Jerry Jones, was a Territory Manager for defendant Agri-Laboratories, Ltd. ("AgriLabs").[1] AgriLabs is a distribution company that sells animal health care products. Jones's job was to sell products to distributors in his geographic territory, which consisted of Tennessee and several other states.

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statement of facts (Docket No. 22), the plaintiff's response thereto (Docket No. 30), and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

Jones was hired in May 2007. He alleges that AgriLabs and its employees engaged in illegal activities and that he was fired for reporting, and for refusing to participate in, those activities. Primarily, the plaintiff alleges that AgriLabs reported inflated sales results so that it could pay certain bonuses to its employees. (*See* Docket No. 29, Ex. 1 ¶ 8 ("The true reason for my discharge was my unwillingness to . . . remain silent about Agrilabs's illegal activity of falsifying its financial performance.").) Jones also alleges: (1) that a co-worker, Randy Holliman, planned to sell a quantity of returned product and keep the money; (2) that Holliman used corporate funds, including expense account funds, for his own personal benefit; (3) that Holliman submitted expense reports for service performed on his personal vehicles; (4) that the plaintiff's supervisor, Matt Harris, the defendant's Eastern Regional Manager, gave free product to a certain distributor; and (5) that Harris told the plaintiff to misrepresent to distributors the possible dangers of a particular product.

The organizational structure of AgriLabs is somewhat unclear. According to the defendant, AgriLabs sells its products to "independent contractor distributors," who in turn sell the products to end users. (Docket No. 21 at 1.) The plaintiff, however, asserts that these distributors are actually "member owners" of AgriLabs and that each distributor "purchased a membership to be the exclusive distributor[] of Agrilabs Products." (Docket No. 29, Ex. 1 ¶ 9.)

In any event, it is undisputed that AgriLabs retains a third-party market research firm, Focus Technology Group, Inc. ("Focus Technology"), to collect data from distributors regarding sales of AgriLabs products to consumers. Focus Technology provides AgriLabs with sales reports based on this data. It also provides similar reports to other companies, including some of

2

AgriLabs's competitors.

The plaintiff alleges that AgriLabs used sales data from Focus Technology to calculate bonuses for its employees, even though AgriLabs knew that the data was incorrect. Jones's affidavit states that "AgriLabs had access to all sales numbers" (*id.* ¶ 21) because it "receives sales information . . . from [its distributors]" (*id.* ¶ 23). He claims that "sales reports were changed by management officials in-house in order for bonuses to be paid." (*Id.* ¶ 23.) Jones "knew the sales report numbers were incorrect because [he] compared two reports that demonstrated this. An employee in Indiana was actually getting credit for sales that [Jones] made." (*Id.* ¶ 22.) Similarly, at his deposition, Jones testified that AgriLabs "[kept] the sales numbers messed up on purpose," that this "affected sales bonuses," and that AgriLabs' management employees "were able to move things around, paying themselves, paying other people, paying their territory managers." (Docket No. 23, Ex. 8 at 237.)

According to his affidavit, the plaintiff "began showing the false numbers to Matt Harris and Randy Holliman as far back as July 2008." (Docket No. 29, Ex. 1 ¶ 24.) AgriLabs has submitted several email chains, dated between March and August 2009, in which Jones notified Harris of a discrepancy between Focus Technology's sales reports and Jones's own sales data. (*See* Docket No. 23, Ex. 4.) In each instance, Harris attempted to resolve the discrepancy and forwarded the issues to Focus Technology, which then followed up on the problems internally.

On Friday, August 21, 2009, Harris met with Jones and placed him on probation, citing his sales performance. Although Jones was "[s]alesman of the year for Focus Products 2008" (Docket No. 29, Ex. 1 ¶ 10) and initially met or exceeded his sales goals, it is undisputed that his

sales figures fell in 2009. Whereas Jones's sales trailed sales in similar territories by 3% in the second half of 2007 and by 7% in the second half of 2008, that disparity rose to 16% in the first half of 2009. (*Id.*, Ex. 9 at 41.) In a June 21, 2009 email, Jones summarized his May 2009 budget report by listing "the Highlights or better put the Low Lights" and noting that his territory's sales were down more than $98,000 year-to-date. (*Id.*, Ex. 5 at 2.) These problems were reflected in Jones's performance reviews. In the first two quarters of 2009, Jones failed to meet a number of sales objectives (*id.*, Ex. 9 at 33-35), and, in July 2009, he received the lowest possible marks in the "present sales numbers and sales performance" and "ability to adapt" categories (*id.* at 36). Jones claims that his sales fell because AgriLabs lost several product lines and because certain customers went out of business. (*Id.*, Ex. 1 ¶ 6.)

At their August 21 meeting, Harris gave Jones a "performance improvement plan" ("PIP") that outlined certain sales objectives. If Jones met the sales objectives during the following three months, he would be given new objectives. If he did not, he would be terminated. Alternatively, Harris gave Jones the option to resign.[2] The defendant maintains that Harris expressed support for Jones, but Jones claims that Harris flatly told him that the sales objectives were purposely unobtainable. In his affidavit, the plaintiff claims that Harris threatened that, if he did not resign, AgriLabs would give a negative reference to any future employer. Nevertheless, the plaintiff signed the PIP form.

Harris expected to hear from Jones the following Monday, August 24, and he left several voicemail messages for Jones on August 24 and 25. Jones failed to return those calls, and he did

---

[2] The parties dispute whether Harris offered Jones a severance package.

not otherwise contact Harris. AgriLabs's policy is that an employee who is absent for two consecutive workdays without notice is presumed to have resigned. In an August 25 email, Harris told Jones that, if he failed to contact Harris regarding the PIP by 5 p.m. on August 26, he would be terminated. The plaintiff's only response was an email stating, "please discontinue any further attempts to contact me." (Docket No. 30 ¶ 24.)

In his affidavit, Jones states that Holliman called him on August 24 and told him that he "was done," that he had no chance of passing probation, and that his only option was to resign. (Docket No. 29, Ex. 1 ¶ 15.) Jones claims that, by doing so, Holliman fired him, and that this was why he failed to contact Harris. (*Id.* ¶ 20.)

The plaintiff filed this suit in November 2009, alleging that he was fired in retaliation for reporting, and for failing to participate in, illegal activity. He asserts a statutory claim under the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304, and a common-law claim for retaliatory discharge.

## ANALYSIS

The defendant has filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56.

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If a moving defendant shows that there is no

genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. Whistleblower Claims

The plaintiff's two causes of action largely overlap. The defendant argues that both claims fail for a number of reasons, including that Jones has not shown that his discharge was caused by his purported whistleblowing.

Tennessee adheres to the employment-at-will doctrine, which generally allows employers to terminate their employees for any cause or for no cause. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534-35 (Tenn. 2002). The TPPA provides, however, that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent

about, illegal activities." Tenn. Code Ann. § 50-1-304(b). The statute defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." *Id.* § 50-1-304(a)(3). Thus, to prevail on a whistleblower claim under the TPPA, a plaintiff must prove:

> (1) the plaintiff's status as an employee of the defendant; (2) the plaintiff's refusal to participate in, or to remain silent about, illegal activities; (3) the employer's discharge of the employee; [and] (4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.

*Treadaway v. Big Red Powersports, LLC*, 611 F. Supp. 2d 768, 783 (E.D. Tenn. 2009) (quoting *Hubrig v. Lockheed Martin Energy Sys., Inc.*, No. 03A01-9711-CV-00525, 1998 Tenn. App. LEXIS 303, at *23 (Tenn. Ct. App. May 4, 1998)) (alteration in original).

Similarly, Tennessee courts recognize a common-law cause of action for retaliatory discharge when an employee has been fired for reporting an illegal activity. To prevail on such a claim, a plaintiff must prove:

> (1) that an employment-at-will relationship existed; (2) that the employee was discharged, (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason[] which violates a clear public policy evidence[d] by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

*Id.* (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002)).

As they apply to this case, then, the main difference between the statutory and common-law causes of action is that "[t]he TPPA requires the plaintiff to show [that his] whistleblowing

7

was the sole, or 'exclusive causal,' reason for [his] termination, while at common law, the whistleblowing need only be a 'substantial factor' in [his] termination." *Id.* (quoting *Guy*, 79 S.W.3d at 537); *see also Bright v. MMS Knoxville, Inc.*, No. M2005-02668-COA-R3-CV, 2007 Tenn. App. LEXIS 510, at *9 (Tenn. Ct. App. Aug. 7, 2007) ("The first three elements of statutory retaliatory discharge are identical to the elements of the common-law claim. The fourth element differs from the common law in that, to benefit from statutory protection, an employee must demonstrate that his or her refusal was the sole reason for his or her discharge.").

The parties agree that Jones was an at-will employee, but the defendant challenges the other elements of the claims. Specifically, AgriLabs argues that: (1) it did not engage in any illegal activity (Docket No. 21 at 13-14); (2) the plaintiff voluntarily resigned, so he was not discharged (*id.* at 14-16); and (3) regardless, the plaintiff's reaction to any illegal activity was not a substantial cause of his discharge (*id.* at 16-17). The plaintiff contends that, at a minimum, there are disputed factual issues regarding these three elements. (Docket No. 29 at 4-7.)

The defendant must prevail here. The plaintiff's claims fail because he has not produced evidence sufficient to show that his purported whistleblowing was a substantial factor, much less the sole factor, in his termination.[3] In analyzing statutory and common-law retaliatory discharge

---

[3] Because the plaintiff's claims fail for lack of causation, the court does not need to consider the defendant's remaining two arguments. Thus, the court will assume, without deciding: (1) that Jones did not voluntarily resign and that he was instead discharged by AgriLabs; and (2) that the alleged misconduct was illegal.
　　The court notes, however, that the plaintiff has utterly failed to explain how any activity by AgriLabs itself was illegal. The court surmises that Holliman's submission of personal expenses as business expenses might have had income tax implications, but the plaintiff has not made that argument. And although the plaintiff alleges that the defendant "report[ed] inflated sales results" (Docket No. 29, Ex. 1 ¶ 4), there is no indication that AgriLabs is a public

claims, Tennessee courts follow the familiar burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999); *see also Provonsha v. Students Taking a Right Stand, Inc.*, No. E2007-00469-COA-R3-CV, 2007 Tenn. App. LEXIS 745, at *11-12 (Tenn. Ct. App. Dec. 3, 2007). The plaintiff faces the initial burden of showing a *prima facie* case of retaliatory discharge, after which the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its decision. *Smith*, 2 S.W.3d at 200. Then, the burden shifts back to the plaintiff to show that the defendant's proffered reasons were pretextual. *Id.* The plaintiff may do this by showing "(1) that the proffered reason has no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate the discharge." *Provonsha*, 2007 Tenn. App. LEXIS 745, at *12 (quotation marks omitted).

Jones has failed to make a *prima facie* showing of retaliatory discharge because he has not shown that his whistleblowing was a substantial factor in his termination. The plaintiff's only evidence on this point is his vague, self-serving affidavit, which makes the conclusory allegation that "[t]he true reason for [his] discharge was [his] unwillingness to participate in and/or remain silent about AgriLabs's illegal activity of falsifying its financial performance."[4]

---

company or that the sales numbers somehow defrauded AgriLabs's shareholders.
     Furthermore, the plaintiff has not submitted evidence, other than his affidavit, to support his claim that AgriLabs actually falsified sales figures. Although the parties have had ample opportunity to take discovery, the plaintiff has not submitted any documentary evidence of wrongdoing. For example, there is no evidence detailing which sales figures were changed or how the figures affected bonuses paid by AgriLabs.

    [4] At his deposition, the plaintiff testified:

> Q. Did Matt Harris tell you that he was giving you this . . .

(Docket No. 29, Ex. 1 ¶ 8.) But "[e]vidence of causation requires more than the facts showing employment, the exercise of rights, and a subsequent discharge." *McCain v. Airport Honda*, No. 03A01-9603-CV-00099, 1996 Tenn. App. LEXIS 618, at *3 (Tenn. Ct. App. Oct. 2, 1996) (citations omitted), *quoted in Provonsha*, 2007 Tenn. App. LEXIS 745, at *14. "It requires direct evidence or compelling circumstantial evidence. The plaintiff's mere 'belief or understanding' of why he was dismissed, is not sufficient to create a genuine issue of material fact." *Id.*; *see also Sykes v. Chattanooga Hous. Auth.*, No. E2008-00525-COA-R3-CV, 2009 Tenn. App. LEXIS 521, at *51-52 (Tenn. Ct. App. July 31, 2009) (finding that a plaintiff's "belief" based on his "personal views" was insufficient to support the causation element of a TPPA claim).

Here, there is no direct evidence that the plaintiff was fired for reporting, or for refusing to participate in, illegal conduct. When Jones was placed on probation, neither Harris nor Holliman[5] mentioned the flawed sales data that Jones previously reported; instead, the probation

> probation period objectives document . . . because . . . of your willingness to report illegal activities? And did he specifically [say] that to you?
>
> A. No.
>
> Q. So how do you know that that's why he was giving you that document?
>
> A. I feel like that's it.

(Docket No. 32, Ex. 1 at 274.)

[5] Although Jones argues that Holliman fired him when they spoke on the phone on Monday, August 24, 2009, it is unclear whether Holliman had any actual or ostensible power to fire Jones. Neither party states Holliman's exact position at AgriLabs. The plaintiff asserts that

10

was explicitly premised on the plaintiff's declining sales.  Nor is there compelling circumstantial evidence that Jones's purported whistleblowing led to his termination.  If anything, the timing of Jones's termination suggests that whistleblowing was *not* a substantial cause.  In his affidavit, Jones states that he "began showing the false [sales] numbers to Matt Harris and Randy Holliman as far back as July 2008" (Docket No. 29, Ex. 1 ¶ 24), but he was not fired until August 2009, more than one year later.[6]  Furthermore, the defendant's evidence shows that, rather than attempting to cover up any discrepancies between sales figures, Harris worked with Focus Technology to resolve the issues.  (*See* Docket No. 23, Ex. 4.)  At most, the plaintiff has shown that he engaged in protected activity and then, after a substantial amount of time passed, he was fired.  This is not enough to show causation.  *McCain*, 1996 Tenn. App. LEXIS 618, at *3.

Even if the plaintiff were able to make out a *prima facie* claim, he has failed to rebut

---

Holliman was a "management employee" (Docket No. 29 at 5), while the defendant simply states that he was "another AgriLabs employee and not Plaintiff's supervisor." (Docket No. 31 at 4.) Regardless, no evidence indicates that Holliman was involved in the decision to place the plaintiff on probation.

[6] Similarly, the plaintiff claims that he reported the other allegedly illegal activities "well before [he] was fired." (Docket No. 29, Ex. 1 ¶ 25.)  But even if the firing had been closer in time to Jones's whistleblowing, that alone would not be enough to meet the causation element of the plaintiff's claims.  *Smith v. C.R. Bard, Inc.*, No. 3-09-0139, 2010 U.S. Dist. LEXIS 81098, at *42-44 (M.D. Tenn. Aug. 9, 2010) (citing *Mason v. Seaton*, 942 S.W.2d 470, 473 (Tenn. 1997)).

In addition, the plaintiff's affidavit merely states that he "reported" the other allegedly illegal activities.  (*Id.*)  This vague statement does not explain whom he reported the activities to, or when exactly he reported them.  At this stage, the plaintiff must "set forth *specific facts* showing that there is a genuine issue for trial."  *Moldowan*, 578 F.3d at 374 (emphasis added). Because there is no evidence showing that Harris or anyone else at AgriLabs knew of Holliman's allegedly illegal activities before Jones was terminated, those activities could not have been the cause of the plaintiff's probation.

11

AgriLabs's proffered legitimate reason for firing him. The defendant claims that it placed Jones on probation because of his faltering sales. (Docket No. 21 at 18.) Although Jones argues that his poor performance was excused by circumstances beyond his control, he does not dispute that his sales were, in fact, falling. Certainly, declining sales provide a legitimate reason to fire a salesman. For the same reasons discussed above, the plaintiff's circumstantial evidence is not sufficient to show that this reason was pretextual.

Because the plaintiff has not shown that his supposed whistleblowing activity was a substantial cause of his termination, the court will dismiss both of his claims.

## **CONCLUSION**

For all of the reasons discussed above, the court will grant the defendant's Motion for Summary Judgment.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge